UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 3:01-cr-00151-JWS |
| Plaintiff, ) | |
| vs. ) | ORDER FROM CHAMBERS |
| ) | |
| FRANK MONIZ, ) | [Re: Motion at Docket 563] |
| ) | |
| Defendant. ) | |
| ) | |

## I. REFERENCE WITHDRAWN

This court hereby withdraws the reference of the amended motion filed by defendant Moniz (and his original motion at docket 522) to the magistrate judge.

## II. MOTION PRESENTED

At docket 563 defendant Frank Moniz ("Moniz") has filed his amended motion to set aside or correct his sentence under 28 U.S.C. § 2255.[1] At docket 565 plaintiff United States of America ("Government") has filed its opposition to the motion, to which Moniz has filed his traverse at docket 583. Neither party has requested a hearing, and the Court, having considered the record in this case, motion, opposition, traverse, and the Notices of Subsequent Related Authority filed by Moniz,[2] has determined that a hearing would not assist the court in reaching a decision.

---

[1] The original motion was filed at docket 522, and it was also referred to the magistrate judge.

[2] Dockets 584 and 585.

### III.  BACKGROUND

Moniz was charged with one count of conspiracy to distribute and possess with intent to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. §§ 846 and 841(a)(1)(A) (Count 1) and two counts of trafficking in narcotics (five grams or more of a substance containing cocaine base) in violation of 21 U.S.C. § 841(a)(1) (Counts 16 and 21).  After a trial by jury, Moniz was convicted of the conspiracy charge (Count 1) and one of the trafficking charges (Count 21); he was acquitted on the second trafficking charge (Count 16).  After finding that Moniz was a "minor participant" and granting him a two-level downward adjustment, the Court sentenced Moniz to 130 months imprisonment followed by five years' supervised release.[3]  Moniz appealed and his conviction and sentence were affirmed in a memorandum decision by the Court of Appeals.[4]  Moniz then timely filed the motion at bar.

### IV.  ISSUES PRESENTED

Moniz presents four grounds in his amended motion: (1) the court applied the wrong sentencing guideline, in particular, that he was sentenced for a violation for which he was not responsible; (2) introduction of hearsay statements made by a co-conspirator violated his Sixth Amendment right to confront the witnesses; (3) he was denied effective assistance of counsel; and (4) the court committed plain error by imposing sentence based upon facts other than those found by the jury beyond a reasonable doubt.

---

[3] Based on an offense level of 30 and criminal category III with a Guideline range of 121 – 151 months.  Moniz invites the court to review the criminal category finding but provides no basis for revisiting that issue.  Accordingly, the Court declines the invitation.

[4] *United States v. Moniz*, 73 Fed.Appx. 981 (2003).

## V.  DISCUSSION

A.  *Sentencing Issues*.

First, to the extent that Moniz relies on *Blakely–Booker-Ameline*,[5] since his conviction became final before *Booker* was decided and *Booker* is not retroactive on collateral review,[6] Moniz cannot obtain relief on that basis.

Moniz makes several arguments concerning the sentence imposed centered around *Apprendi*.[7]  In all of these arguments, Moniz overlooks the simple fact that he was convicted of a violation of 21 U.S.C. § 841(a)(1)(A), conspiracy to distribute and possess with intent to distribute *more than 50 grams of cocaine base*, which carries a sentence of 10 years to life.[8]  In order to find Moniz guilty of Count 1, the jury found that the conspiracy involved more than 50 grams of cocaine base.[9]  The actual quantity, to the extent it exceeded 50 grams, whether it was 283.5 grams, 329.4 grams, or some other amount, was irrelevant.  Thus, he "fails to satisfy the threshold condition of *Apprendi* that the actual sentence imposed be longer than the maximum sentence for the crime for which a defendant has been validly convicted."[10]  Moniz is not entitled to relief on this basis either.

---

[5] *Blakely v. Washington,* 542 U.S. 296 (2004); *United States v. Booker*, 543 U.S. 220 (2005); *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc).

[6] *United States v. Cruz*, 423 F.3d 119, 1121 (9th Cir. 2005).

[7] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[8] 21 U.S.C. § 841(b)(1)(A).

[9] Moniz does not challenge his conviction.  The specific jury finding [Docket 301, Verdict; Docket 541, Volume 5 Transcript of Proceedings, p. 5-9:4 to 12 (emphasis added)]:

> Verdict as to Count 1.  We, the jury in the above-captioned case, unanimously find the defendant Frank Moniz guilty of conspiracy as charged in Count 1 of the first superceding indictment.  Specifically, we unanimously find the defendant guilty of conspiring to commit the following offenses against the United States:  to manufacture, to distribute, and to possess with the intent to distribute *50 grams of more of a mixture or substance containing a detectable amount of cocaine base, crack*: * * *.

[10] *See United States v. Ellis*, 241 U.S. 1096, 1104 (9th Cir. 2004).

Moniz also argues that the court should have granted him a further downward adjustment as a minor participant. Moniz is not entitled to relief on this basis for two reasons. First, this issue was raised on appeal and rejected. Generally, under the "law of the case" doctrine, resolution of a defendant's claim on direct appeal precludes collateral review of the same issue in a § 2255 motion.[11] Second, while, as argued by Moniz, there may have been sufficient evidence to support a further downward departure based on his participation level, that is not the same as saying there was sufficient evidence to compel a finding of "minimal participation."

Moniz further suggests that "discretionary reconsideration of the sentence in light of Booker and Ameline is warranted." First, there is no authority that grants this court discretion to reconsider a sentence applying the Guidelines as discretionary not mandatory in a case to which *Booker* does not apply, *i.e.*, on collateral review after a conviction is final.[12] Second, even if the Court were to reconsider treating the Guidelines as advisory, Moniz has not provided any basis for imposing a different sentence. [13]

Finally, the court has reviewed all the other contentions raised by Moniz with respect to the sentence imposed and finds them to be without merit.

B. *Sixth Amendment Confrontational Issue*.

Moniz complains that the Court should not have permitted Moses Carlo Ramos (a co-conspirator turned witness) to testify to hearsay statements made by another co-conspirator Contreras,[14] a violation of *Bruton* and *Crawford*.[15] Specifically, he complains

---

[11] *See United States v. Scrivner*, 189 F.3d 825, 828 (9th Cir.1999)

[12] The authority cited by Moniz, *United States v. Luna*, 125 Fed.Appx. 134 (9th Cir.2005), is deficient in two respects. First, it is an unpublished opinion cited in violation of 9th Cir. Rule 36-3. Second, *Luna* was still open on direct appeal, to which *Booker* applied.

[13] Although Moniz refers to 18 U.S.C. § 3553(a), he does not identify any evidence or information in the PSR nor does he proffer any additional evidence relevant to the § 3553(a) factors that the Court should have considered that could have resulted in a lower sentence.

[14] All other indicted co-conspirators had "pled-out"; only Contreras and Moniz went to trial.

[15] *Bruton v. United States*, 391 U.S. 123 (1968); *Crawford v. Washington*, 541 U.S. 1 (2004)

that Ramos should not have been allowed to testify about a conversation that Ramos had with Contreras related to Moniz being Contreras's "cook."

In *Crawford,* the Supreme Court determined that admissibility of an unavailable declarant's out-of-court statements depends on whether the statements were "testimonial" in nature.[16]  Thus, to decide whether Moniz's Confrontation Clause rights were violated, the Court must first determine whether the statements Contreras made to Ramos were "testimonial" within the meaning of *Crawford.*[17]  The Ninth Circuit has answered that question in the negative: statements made by co-conspirators in the furtherance of the conspiracy are not "testimonial" within the scope of *Crawford.*[18]  The requirements for admission of a co-conspirator's statement under FED. R. EVID. 801(d)(2)(E) are identical to the requirements of the Confrontation Clause.[19]  Therefore, if a statement is admissible under Rule 801(d)(2)(E), the defendant's right of confrontation is not violated.[20]  Moniz was not denied his right to confront Contreras under the Sixth Amendment, and he is not entitled to relief on that basis.

C.  *Ineffective Assistance of Counsel.*

Moniz asserts that the performance of his trial counsel was ineffective in two particulars: (1) a failure to request a pre-trial evidentiary hearing on and allowing the introduction of a videotape without an accompanying translation of the audio portion, which was in Spanish; and (2) failure to argue the drug quantity issue during sentencing or on appeal.

To demonstrate ineffective assistance of counsel, Moniz must show both that his counsel's performance was deficient and that the deficient performance prejudiced his

---

[16] *Crawford,* 541 U.S. at 68; *see also United States v. Cervantes-Flores,* 421 F.3d 825, 831 (9th Cir.2005).

[17] Unless the court finds that the statement was testimonial in nature, it need not reach issue of the retroactive effect of *Crawford.* See *Bockting v. Bayer*, 418 F,3d 1055 (9th Cir.2005), *cert. pending*.

[18] *United States v. Allen*, 425 F.3d 1231, 1234–1235 (9th Cir.2005), *cert. denied*, 547 U.S. ___, 126 S.Ct. 1487 (2006).

[19] *Bourjaily v. United States*, 483 U.S. 171, 182 (1987).

[20]  *Id.*

defense.[21]  Moniz has the burden of proof on both elements.[22]  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[23]  Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[24]  Moniz argues that counsel's performance was deficient because he failed to move for an evidentiary hearing and allowed the introduction of the tape, which contained conversations in Spanish, without first obtaining a translation of the audio portion that involved the sale of "Dulce de Leche."  Moniz submits "Dulce de Leche" was a type of milk candy, but the Government contended was cocaine.[25]  Moniz argues that had counsel properly investigated the existence of milk candy and the proper translation it would have allowed him to present exculpatory argument or information to the jury.[26]

The argument advanced by Moniz on this point is somewhat difficult to follow and incomplete.  The prosecutor argued:[27]

> And I submit that when Mr. Creeper [referring to Moniz] approaches Alex Contreras and they are discussing the quality or the color of the crack cocaine on the table, Mr. Moniz responds, "Yo I could sell that," expletive.  He wasn't talking about selling Girl Scout cookies.  He wasn't selling — talking about selling sugar or sugar cubes.  He was talking about his ability to sell cocaine.

---

[21] *Strickland v. Washington,* 466 U.S. 668, 687 (1984)

[22] *Turk v. White*, 116 F.3d 1264 (9th Cir.1997).

[23] *Strickland*.

[24] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[25] "Dulce de Leche" is a delicacy in South and Central America literally translated as "milk candy." Source: Wikipedia accessible at http://en.wikipedia.org/wiki/Dulce_de_leche (last accessed March 29, 2006).

[26] As the Government correctly points out, Moniz does not indicate the basis on which the video tape might have been excluded from evidence.  Consequently, there is no basis for finding that the failure to move for an evidentiary hearing, the purpose which is presumptively to exclude evidence, constituted deficient performance on the part of trial counsel.

[27] Docket 540, Volume 4, Partial Transcript of Proceedings, p. 4-38:1 to 7.

In his argument, counsel for Moniz argued on that point:[28]

> The conversation, listen to the conversation. Mr. Collins has characterized that as talking about the quality of what's on the table. Well you're going to have to listen to that. I think the words you're going to hear are "Almond Joy, candy, leche," and then he says something about "I ate it." There is no evidence that people eat cocaine or crack. So he is talking about something he ate and he is saying the words "candy"; can it be said that they're talking — that's exactly what they're talking about, and he is saying, "It's good enough, even I could sell it."
>
> Listen to those words. For you to find that they're actually talking about drugs, there's got to be more to it than what Mr. Collins has said. There has to be something more coming out of those words to you.
>
> Now part of the problem with this — these tapes is a lot of it is in Spanish. And Mr. — the testimony is, Mr. Moniz doesn't speak Spanish. And for some reason, we don't have these things translated. But what is there does not come out and say, "We're talking about what's on the table." And even if you take it — don't — aren't looking for indicators like that, the context just doesn't work. He ate something, and he said he could sell it. You don't eat cocaine. You don't eat crack.

The gist of his argument seems to be that with respect to items that were on the table shown in the video tape Moniz could have introduced evidence that there was such a thing as "Dulce de Leche" or "milk candy" and that he was referring to it and not cocaine. Other than an ability to establish that "Dulce de Leche" referred to "the real thing," Moniz suggests no possible evidence that might have been introduced to establish that he was referring to candy, not cocaine. Perhaps more telling is the fact that it appears Moniz does not understand Spanish; therefore, how could Moniz have known that "Dulce de Leche" referred to candy? Since there is no evidence that Moniz understood that "Dulce de Leche" referred to "milk candy," it takes a quantum leap in logic to assume that in his response "I could sell that" he was referring to "milk candy" because someone referred to "Dulce de Leche." Moreover, the context as shown on

---

[28] Docket 540, Volume 4, Partial Transcript of Proceedings, p. 4-56:17 to 4-57:14.

7

the video is simply inconsistent with people engaged in candy sales.  The video shows people engaged in what is obviously the business of selling drugs.

Substantial other evidence established that the "goodies" on the table were drugs, not "candy," and Moniz does not allude to any evidence that would neutralize this evidence.  Moreover, notwithstanding that raising ineffective counsel as a grounds for granting *habeas* relief constitutes a waiver of the attorney client privilege,[29] Moniz provides nothing concerning his conversations with trial counsel concerning the events depicted on the video tape, what he was referring to, his knowledge of the character or nature or the items on the table, or his involvement.  Trial counsel relied on two points: (1) that Moniz did not understand what was being said in Spanish (he could, therefore, only have been referring to candy, not crack) and (2) that one eats candy — not crack cocaine.  On the other hand, in order to use the meaning of "Dulce de Leche" as showing that Moniz was referring to candy would have required Moniz to understand Spanish, which would have also meant he understood the rest of the conversations in Spanish.  This could have undercut the defense argument that the conversations that were not in Spanish did not indicate what was on the table.  It is just as likely, if not more so, that precisely what they were talking about was what was on the table, and what was on the table was cocaine.

Tactical decisions made by trial counsel are to be accorded substantial deference and are virtually unchallengeable.[30]  There is no evidence to support the conclusory claim that counsel failed to adequately investigate the potential benefits or detriments of having the conversations in Spanish translated and presented to the jury.  In the absence of such evidence, the court presumes, as it must, that in this case it was more likely than not that trial counsel was faced with two conflicting potential arguments and made a decision to go with the one that in his professional judgment was the most

---

[29] *See Strickland*, 466 U.S. at 691

[30] *Strickland*, 466 U.S. at 689–690; *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1243–1244 (9th Cir.2005)

plausible and presented the best potential for acquittal.  Once counsel reasonably selects a defense, it is not deficient performance to fail to pursue alternative defenses.[31]

Turning to the second basis for this ground, the failure to argue the drug quantity issue, not only would counsel have had to been prescient as the Government argues, but as discussed in Part IV.A. above, under extant controlling law he would not have prevailed.  Moreover, also as discussed in Part IV.A. above, even if counsel and the court had anticipated *Booker*, treating the Guidelines as advisory instead of mandatory, the result would not have changed: the sentence imposed would have been the same.

Moniz has failed to establish that trial counsel's performance was either deficient or, if deficient, demonstrate a reasonable probability that counsel's deficiencies "undermine confidence in the outcome" of the proceeding.[32]

### VI.  CONCLUSION

Based on the foregoing, the motion at docket 563 (which amends the motion at docket 522) seeking relief pursuant to 28 U.S.C. § 2255 is **DENIED**, and

**IT IS FURTHER ORDERED** that this court will not issue a Certificate of Appealability.[33]  If defendant wishes to appeal, he should request a Certificate of Appealability from the Circuit Court.

DATED at Anchorage, Alaska this 12th of April, 2006.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[31] *Rios v. Rocha*, 299 F.3d 796, 807 (9th Cir.2002).

[32] *Strickland,* 466 U.S. at 694

[33] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).